UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

PAT CHENOWETH AHO,                                          No. 05-14608

Debtor(s).
_____/

Memorandum on Objection to Trustee's Compensation
_____

     In his application for compensation, the Chapter 7 Trustee Jeffry Locke reported disbursed gross receipts of $1,979,638.15.  He calculated his maximum compensation pursuant to § 326(a) of the Bankruptcy Code for disbursing this amount to be $82,639.14.   Locke seeks compensation in the amount of $75,000 which he argues is considerably below the maximum allowable.

     The court finds Locke's requested compensation to be very reasonable given the five years he has spent administering this complex and contentious case.   The U.S. Trustee does not argue otherwise.  However, the U.S. Trustee objects on strictly legal grounds, arguing that Locke has calculated the maximum fee improperly.

     The U.S. Trustee argues that Locke should not have calculated his maximum fee on all disbursements stemming from the $1,636,567.36 Locke reported receiving and disbursing from the sale of real property located in Camp Meeker.[1]  The debtor held a 2/3 interest in that property, with the remaining 1/3 held by the debtor's relatives and a suspended corporation in which the debtor held 50%

_____

[1]. The remaining $343,070.79 disbursed by Locke is not at issue.

interest.  The U.S. Trustee argues that Locke's use of $1,636,567 in full to calculate his maximum fee is incorrect because Locke may not include amounts that the escrow company disbursed on behalf of the co-sellers as to the co-sellers' properties.  Considering credits, advances, deposits, and the allocated 66% of a judgment lien and closing fees, the U.S. Trustee argues that Locke's maximum compensation calculated under § 326(a) is $69,581.40.

The point of disagreement is the U.S. Trustee's unsupported statement of the law as being "The trustee may not include amounts that the escrow company disbursed on behalf of the Co-Sellers as to the Co-Sellers' properties."  The court disagrees with this statement, and believes that the correct rule is stated by *Collier*:  "Sometimes a trustee will sell estate property co-owned with a nondebtor.  When the trustee supervises an escrow agent in making specific disbursements, even the nondebtor share counts because the trustee services were performed in relation to the whole property." 3 **Collier on Bankruptcy** (16th Ed.)¶326.02[1][g], p. 326-17.  In this case, the sale was neither simple nor straightforward.  It took considerable time and expertise by Locke to make the sale come together and properly instruct the escrow agent.  Under these circumstances, all disbursements should be considered in calculating his maximum compensation.

In order to determine the maximum allowable trustee's fee, the court must closely examine the escrow closing statement for the Camp Meeker property.  The closing statement essentially breaks $1,636,567.36 down to the following amounts:

(1) $712,446.85 payoff amount to the first deed of trust;

(2) $245,445.27 in real property taxes and assessment;

(3) $100,569.04 payoff amount to a judgment lien;

(4) $11,000 advance from the Buyer for the benefit of paying the corporate co-seller's past due taxes, interest and penalties;

(5) $59,256.00 in broker's fees and closing costs;

(6) $357,850.20 disbursement to co-sellers; and

(7) $150,000.00 agreed-upon disbursement to the bankruptcy estate.

2

As to the first deed of trust, the transaction included a $12,000 reduction to the $712,446.85 payoff amount. The court agrees with the U.S. Trustee that such a credit does not qualify as "monies disbursed" for purposes of § 326(a). Instead, "monies disbursed" refers to the payment by a trustee to creditors of some form of a medium of exchange that is commonly accepted in exchanges and commercial transactions - in other words, cash, currency or its equivalent. *In re Hokulani Square, Inc.*, 460 B.R. 763,771 (9th Cir. BAP 2011). Accordingly, the escrow company disbursed $700,446.85 to payoff the first deed of trust.

Likewise, the amount of real property taxes and assessment listed on the escrow closing statement includes negligible adjustments. After applying these reductions, the escrow company disbursed $245,377.91 in real estate taxes.

As to the $100,569.04 payoff amount to the judgment lien, the escrow statement shows that one of the co-owners separately paid $24,500 into escrow towards their liability on the lien. Additionally, the purchase agreement for the sale of the property provides that the estate was responsible for 66% of the judgment to be paid at the close of escrow. On this basis the U.S. Trustee argues that the proper amount for use in calculating Locke's fees is 66% of the difference between $100,569.04 and the $24,500 deposit. The court disagrees, for the reasons stated above. It does not matter that the source was not estate funds, or that there was an agreement for allocating the debt. Section 326(a) provides that the maximum fee is calculated on monies disbursed or turned over in the case by the trustee, without reference to the source of the funds or the debt. The crucial test is whether the particular property has been justifiably administered during the bankruptcy case and whether the trustee has properly performed services in relation to that property. *In re Blair*, 329 B.R. 358, 2005 WL 2009303 (9th Cir. BAP (Cal.)(unpublished decision), citing *S.W. Media, Inc. v. Rau*, 708 F.2d 419, 423 (9th Cir. 1983)(superceded on other grounds), 3 **Collier on Bankruptcy** (16th Ed.) ¶ 326.02[1][f][iii], p. 326-16; *In re Schautz*, 390 F.2d 797, 799-800 (2d Cir. 1968). Here, no matter how the monies entered Locke's hands, he nonetheless disbursed them. Accordingly, the proper amount for use in the § 326(a) calculation is the entire $100,569.04.

3

Case: 05-14608   Doc# 280   Filed: 11/21/13   Entered: 11/21/13 13:28:21   Page 3 of 4

The same rule applies to the $11,000 advance from the buyer for the benefit of paying the corporate co-seller's past due taxes, interest and penalties, the $59,256 in broker's fees and closing costs, and the $357,850.20 disbursement to co-sellers. There does not appear to be a dispute that the $150,000 disbursed to the bankruptcy estate should be included in the calculation of Locke's fees.

Accordingly, the proper amount from the sale proceeds for use in calculating Locke's fees in this case is $1,624,500, comprised of:

(1) $700,446.85 payoff amount to the first deed of trust;

(2) $245,377.91 in real property taxes and assessment;

(3) $100,569.04 payoff amount to the judgment lien;

(4) $11,000 advance from the Buyer for the benefit of paying the corporate co-seller's past due taxes, interest and penalties;

(5) $59,256.00 in broker's fees and closing costs;

(6) $357,850.20 disbursement to co-sellers; and

(7) $150,000.00 agreed-upon disbursement to the bankruptcy estate.

Adding $1,624,500 to the $343,070.79 that is not at issue, and the total amount disbursed is $1,967,570.79. The maximum allowable compensation on this amount is $82,277.12, which is several hundred dollars below Locke's calculated maximum fee but still above his requested compensation. Since Locke's requested compensation does not exceed the maximum and is reasonable, the objection will be overruled his application will be approved. Counsel for Locke shall submit an appropriate form of order.

Dated: November 21, 2013

Alan Jaroslovsky
Chief Bankruptcy Judge

4